(No. 6431.   July 12, 1937.)

PANHANDLE GROWERS UNION, a Corporation, Respondent, v. S. P. SCOTT and S. J. McMILLAN, Sheriff of Kootenai County, Idaho, Defendants, THE WASHINGTON TRUST COMPANY, a Corporation, Appellant.

[70 Pac. (2d) 372.]

J. Ward Arney, for Appellant.

Whitla & Knudson, for Respondent.

BUDGE, J.—On October 18, 1933, one Boyington recovered a judgment against the Panhandle Growers Union, hereinafter referred to as the Union, the sheriff's certificate of sale issued in connection therewith being purchased by S. P. Scott.

On December 16, 1933, the American Trust Company, hereinafter referred to as the Bank, recovered a judgment against the Union, which Scott, on January 17, 1934, acquired by assignment, and on sheriff's sale the certificate of sale was issued (March 26, 1934) in the name of Scott, and a duplicate of the certificate was recorded in Kootenai county. (This certificate of sale is the one involved herein.)

Early in January, 1934, the Union owed a balance to the Cutler Mfg. Co. on a conditional sales contract affecting an apple washer, which contract Scott thereafter purchased.

On January 15, 1934, Scott entered into an oral agreement with the Union, the owners of the property described in the

certificate of sale and a party to the conditional sales contract, that upon payment to him by the Union of the amount he paid for the three above-mentioned items (the two judgments and the conditional sales contract) he would transfer to the Union all of the right, title and interest which he had acquired by such purchases. This agreement provided for payment in certain manners other than in cash, in part, it being agreed that Scott would accept as reimbursement any credit which the Union could secure for him in connection with an indebtedness which Scott owed the Post Falls Box Company, and certain other credits which need not be considered.

Pursuant to the oral agreement, Scott was ultimately reimbursed by the Union for the amounts he had paid out in acquiring the judgments and the conditional sales contract.

After completely performing its part of the agreement the Union was unable to find Scott and this action was then brought to restrain the sheriff from issuing a sheriff's deed, in connection with the property described in the certificate of sale, to Scott or to any other person; that the sheriff's certificate of sale be canceled; and, that title to the property be decreed to be vested in the Union.

The Bank intervened in the foregoing action praying that it be decreed to be the owner of the sheriff's certificate of sale, and entitled to sheriff's deed to the property, and, that it be decreed to be the owner of the conditional sales contract.

On April 9, 1934, subsequent to the oral agreement between Scott and the Union, Scott, by a properly acknowledged assignment, transferred the sheriff's certificate of sale involved to the Bank and assigned the conditional sales contract to the Bank by an unacknowledged assignment, and on the same date the Bank accepted delivery from Scott of the original certificate of sale and the original conditional sales contract, and made a further advancement to him of $1,000.

Subsequent to the bringing of the action by the Union the Bank recorded its assignment of the sheriff's certificate of sale.

The issue between the Bank and the Union resulted in a decree for the Union as to both the certificate of sale and the conditional sales contract, from which the Bank appealed.

'Appellant's brief contains twelve alleged assignments of error which need not be discussed *seriatim* since there is but one proposition involved, namely, which of two innocent parties should suffer.

The court found, *inter alia:*

"that after the plaintiff (the Union) and the defendant S. P. Scott, had entered into the agreement as hereinbefore mentioned, and after the said plaintiff (the Union) had substantially performed said agreement, the defendant S. P. Scott assigned the Sheriff's Certificate of Sale hereinbefore mentioned to the Intervenor, the Washington Trust Company. That said assignment was made without notice to the plaintiff, (the Union) and the plaintiff (the Union) knew nothing about said Certificate of Sale having been so assigned until after the filing of this action, at which time the agreement which had been entered into between the plaintiff (the Union) and the defendant S. P. Scott as hereinbefore mentioned, had been fully performed on the part of the plaintiff (the Union)."

In other words, it appears that the Union had paid its known debtor, Scott, in full, but could not obtain from him the necessary proof to entitle it to a certificate of redemption, due to the fact it was unable to locate Scott. The Bank, unbeknown to the Union, until after the present action was filed, held the certificate of sale and the conditional sales contract by assignments from Scott and also by delivery of the originals. The assignment of the certificate of sale to the Bank, having been properly acknowledged, was entitled to be recorded. (I. C. A., secs. 54–801, 54–805.) The Bank, however, neither recorded the assignment of the certificate of sale, nor gave notice to the Union that it was the owner and holder thereof, except to record the assignment of the certificate of sale after the instant suit was instituted by the Union. The Bank, having the certificate of sale in its possession, knew who Scott's debtors were and knew that the Union had the right to redeem its property within the time specified by statute, and also knew that since the conditional sales contract was a non-negotiable instrument that it was subject to all defenses that the Union might have to defeat its enforcement.

Both parties to the appeal cite and rely upon *Millick v. O'Malley*, 47 Ida. 106, 273 Pac. 947, wherein it is held:

" . . . . where one of two persons must suffer from the wrongful act of a third, he must suffer who left it in the power of such third person to do the wrong."

■■ It would seem to be established that Scott entered into an agreement with the Union whereby upon payment by the Union of the amounts expended by Scott therefor, the right and title Scott purchased with reference to the certificate of sale and the conditional sales contract would be conveyed to the Union. It would seem to be further established that the Union paid Scott in the full amount that was due to accomplish a redemption of the property and a return of the conditional sales contract. There is evidence to the effect that a substantial performance of the agreement between Scott and the Union had taken place prior to the date which the Bank claims the assignment of the certificate of sale and conditional sales contract was made to it; that the Union had no notice whatever, either actual or constructive, of the assignment or delivery to the Bank of the certificate of sale and conditional sales contract; that the Bank did not record the assignment of the certificate of sale until approximately three months after the instant suit was commenced. The Bank placed it within the power of Scott, both by failure to record the assignment of the certificate of sale or to give notice to the Union that it was the owner and holder of the certificate of sale and conditional sales contract, to receive payments from the Union on its indebtedness. The Bank had full knowledge that the Union was entitled to redeem and that the Union was the maker of the conditional sales contract. The Union under the provisions of I. C. A., section 8–401 et seq., was entitled to redeem the property sold by making the payments to the purchaser. (I. C. A., sec. 8–404.) So far as the Union knew, Scott was the only purchaser, the only person who held the certificate of sale. It was not the duty of the Union to search over the country in an effort to unearth a possible hidden purchaser from Scott, but it had the right to presume, there being nothing to indicate to the contrary, that since Scott was the record owner of the certificate of sale

that he continued to own it, and when it in effect paid him a redemption of the property was effected. Likewise when the Union paid the balance due on the conditional sales contract such contract was discharged.

The Bank having a written and acknowledged assignment of the certificate of sale, an assignment of the conditional sales contract and also the original certificate of sale and conditional sales contract in its possession, could have filed the assignment of the certificate of sale of record, and could have advised the Union (it appearing as a redemptioner in the certificate of sale, and as the maker of the conditional sales contract), if it desired to affect the Union with notice of its rights. Neglecting to do any of these things, which were wholly within its power to do, the equity of the Bank must be held inferior to that of the Union, which fully performed its contract with Scott, relying solely upon the record title as to the certificate of sale, and the only known title as to the conditional sales contract, which showed Scott to be the owner.

Judgment affirmed. Costs awarded to respondent.

Morgan, C. J., and Holden, Ailshie and Givens, JJ., concur.